[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation, as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to `off-line' deposit accounts, which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks, claims to funds alleged to have been withdrawn without the depositor's authority to do so, claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company;"
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of `off-line' deposit account claims, including, without limitation, those powers enumerated in Rhode Island General Laws § 8-2-11.1 (1985 Reenactment)."
R.I.G.L. 8-2-11.1 provides, in pertinent part, that:
 "Such administrator/master may be authorized: (1) To regulate all proceedings before him; (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties; (3) To require the production before him of books, papers, vouchers, documents and writings; (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses, to put witnesses on oath, to examine them and to call parties to the proceeding and examine them upon oath;"
In accordance with the above, a hearing was held on the above referenced claim on July 1, 1992. At the conclusion of the hearing, the parties submitted Post-Hearing Memoranda.
Mr. Antonio Caliri ("Claimant") worked in a family run business known as Pocasset Monument Works from 1937 until his retirement in 1989. In 1977 Claimant began a banking relationship with Heritage then known as County Loan.
On or about March 7, 1983 Claimant opened account number 02-0055991-5 ("Claimed Account") with a deposit of $50,000 with interest to be paid thereon at the rate of 11% per annum. Although, in 1983, Heritage used a record-keeping system whereby deposits were machine printed into passbooks only this initial deposit was so processed. All following transactions in the claimed Account were handwritten.
Interest was allowed to accrue in the Claimed Account until 1985 when Claimant began to make periodic withdrawals. The Claimant testified that he intended the Account to be used for his retirement and withdrew only the interest accrued in the Account.
Claimant testified that he made additional deposits of $3,000 on June 18, 1985, $30,000 on February 2, 1989 and $5,000 on March 6, 1989 while, during this period, withdrawing only the accrued interest. However, none of these deposits are reflected in any Heritage records of any "on-line" savings accounts.
In addition to the above referenced Heritage records, a cash settlement sheet for the Atwells Avenue branch of Heritage exists for the time period of the questioned deposits. These sheets contain a figure hereinafter known as a "plug figure" which represented money that should have been in Heritage but for some reason was not. Said plug figure is not a device in accord with generally accepted accounting principles but was used at Heritage to balance out the daily settlement sheets. This plug figure at Heritage therefore represented a "bank within a bank", an increase in the figure represents money that had gone out of Heritage without a corresponding withdrawal, a decrease means that money came into Heritage and was not evidenced by a deposit or loan payment.
An examination of the plug figure for the dates in question show that on June 18, 1985, the day of the alleged $3,000 deposit, the plug figure decreased by $3,000 i.e. $3,000 came into Heritage not evidenced by a deposit or loan payment. On February 2, 1989, the date of the alleged $30,000 deposit, the plug figure decreased by $29,975 and on March 6, 1989, the date of the alleged $5,000 deposit the plug figure was decreased by $12,125. It is important to note that a change in the plug figure cannot be used as conclusive proof of any individual deposit or withdrawal only that funds were entering or leaving Heritage on those dates, outside of normal banking procedures.
In April of 1989, Claimant closed another account he maintained at Heritage and numbered 01-00094-3 which as of that date contained $35,042.81 and paid interest at the rate of 8% per annum and deposited that amount into the claimed Account. This withdrawal is reflected in a withdrawal slip from that account and notes that the funds were transferred to an account that carries the same number as the claimed Account.
Finally, on April 23, 1989, Claimant alleges that he closed an Individual Retirement Account that he maintained at the now defunct Greater Providence Deposit Corporation and deposited those monies amounting to $39,515.43 into the claimed Account. Heritage records indeed reflect that on April 24, 1989 a check in that amount was drawn on Greater Providence Deposit and was processed through Heritage and deposited into the Heritage General Account at Fleet National Bank. However, Heritage records do not reflect a deposit or loan payment in that amount on that date but the plug figure did in fact decrease by $39,304.
During this period, the only withdrawals testified to by Claimant or supported by Heritage records were the periodic withdrawals of interest beginning in 1985 at the rate of $400 per month and later increased to $945 per month in 1989 and finally increased to $1,100 per month in 1990. These interest payments were noted in the passbook at various points and reflected in the Heritage records and were usually noted as "C/C", i.e. cash for cash or as "interest".
After careful review of the evidence submitted as well as consideration of the testimony of the various witnesses, the Court finds that Claimant did in fact open a savings account at Heritage and over a period of time made deposits into same in the amount of $162,558.24. After interest is calculated at the above referenced rate of 11% per annum and interest payments made by Heritage to Claimant are considered, this Court concludes that Claimant's Account 02-005991-5 should have had a balance as of April 23, 1990 in the amount of $179,116.67.
The Receiver has raised the question of whether Claimant's Account is in fact a deposit account. Claimant admits never receiving the required 1099's reporting his yearly interest payments. Claimant also stated that although he knew that his passbook was handwritten he never questioned anyone at Heritage as to why that was so.
This Court finds Claimants testimony convincing on this issue. Claimant trusted the officials at Heritage and, although all Rhode Island now understands how misplaced that trust was, there was no reason for Claimant to suspect the unusual banking practices that Heritage employed when this business relationship began. Claimant has convinced this Court that he believed that he had established a deposit account at Heritage that would protect his savings for use during his retirement and that it was not unreasonable for Claimant to hold that belief. Claimant had no reason to believe that he was anything other than a depositor acting in the normal course of business.
Accordingly, Claimant is entitled to $179,116.67 from the claimed Account. Counsel will prepare an order in accordance with this decision.